COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges AtLee, Causey and Senior Judge Haley
Argued at Richmond, Virginia


JAMES DAVID FRIES

                                   MEMORANDUM OPINION* BY
v.       Record No. 0989-21-2        JUDGE DORIS HENDERSON CAUSEY
                                       FEBRUARY 14, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Lynn S. Brice, Judge

Todd M. Ritter (Hill & Rainey, on brief), for appellant.

William K. Hamilton, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


James David Fries ("appellant") challenges his conviction for aggravated malicious

wounding. He argues that the evidence was insufficient as a matter of law to establish that he acted

with malice, his statutory and constitutional speedy trial rights were violated, and the trial court

erred in "failing to directly answer a jury question regarding the meaning of 'disable.'" We hold

that the trial court did not err and affirm the conviction.

BACKGROUND[1]

Appellant and Edward West had been romantically involved for about seven years. On

January 20, 2020, they had a "very heated argument" at their home, before West reluctantly

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). In doing so, we discard any conflicting evidence and regard as true all credible evidence favorable to the Commonwealth and all fair inferences that reasonably may be drawn from that evidence. *Id.* at 473.

agreed to drive appellant to Walmart. When they got to Walmart, they fought again. Fearing that West would leave him there, appellant attempted to take West's car keys, and the two men physically struggled for several minutes in the parking lot. West felt something "really hot" on his body and saw that he was bleeding profusely. When West asked appellant if he had stabbed him, appellant responded, "Come on we need to go. We need to go." Appellant put West into the car and drove the six miles to their home, rather than seeking immediate medical attention. Medical evidence later confirmed West's injury was consistent with a knife wound.

Having been alerted of the altercation at Walmart, the police stopped appellant's car as he drove into his driveway. Emergency medical personnel transported West to the hospital, where he remained for nearly a month and underwent five surgeries. West recalled nothing after the stabbing until he awoke in the hospital three weeks later. His injuries left him with breathing issues and permanent medication dependency. Appellant testified that West stabbed himself as they struggled over the knife and appellant then threw the knife away. The police never recovered a weapon.

Appellant's preliminary hearing was scheduled for February 26, 2020, but was continued to April 2, 2020. On March 16, 2020, the Supreme Court of Virginia issued its first judicial emergency order in response to the then-emerging COVID-19 pandemic, restricting trials and non-emergency proceedings, and tolling statutory speedy trial deadlines.[2] In the following months, the Supreme Court issued additional orders extending the emergency through June 22, 2022. *See* EDO of May 27, 2022. Appellant's preliminary hearing was held on July 24, 2020, and he was indicted on September 21, 2020. On September 11, 2020, the parties jointly moved

---

[2] *See In re:* Order Declaring a Judicial Emergency in Response to COVID-19 Emergency 1-2 (Va. Mar. 16, 2020). The Supreme Court's emergency declaration orders in response to the COVID-19 pandemic are cited in this opinion as "EDO of [date]." All cited orders are available on the Supreme Court's website. *See* https://www.vacourts.gov/news/items/covid/scv_emergency_orders.pdf.

for a status hearing on September 30, 2020. Jury trials were to recommence in the trial court on November 2, 2020, under a plan approved by the Supreme Court. Appellant requested a jury trial, and the parties agreed to a trial date of January 21, 2021.

After setting appellant's trial date, the court learned that a murder trial, which took priority over appellant's case, was also scheduled for January 21, 2021. At a hearing on January 15, 2021, the parties selected a new trial date of April 28, 2021. Defense counsel noted that his client was not waiving his speedy trial rights, but he conceded that he understood the COVID-19 restrictions on the court necessitated continuing the case because only one courtroom was available for jury trials. After the hearing, a circuit court deputy clerk emailed the Commonwealth advising that there were three potential trial dates available in February and March 2021 if the matter was transferred to another judge. Both the Commonwealth and appellant were available on February 17. The trial remained scheduled for April 28, however, as the original judge elected to keep the matter on her docket.

On April 21, 2021, appellant moved to dismiss the indictment based on the violation of his statutory and constitutional speedy trial rights. At the motion hearing, defense counsel conceded that the Supreme Court emergency orders tolled appellant's statutory speedy trial right. Regarding appellant's constitutional right, the trial court found that the delay from January 21, 2021, until April 28, 2021 was due to a "clerical error." The court also found "that both counsel ha[d] been . . . diligent in getting th[e] case to trial." Referencing the "prejudice" factor of the constitutional test to evaluate speedy trial claims under *Barker v. Wingo*, 407 U.S. 514 (1972), the court found that appellant had not argued "anything specific that ha[d] been prejudicial" to him. The court denied appellant's motion.

During trial, the jury was instructed, without objection, that the Commonwealth had to prove that appellant acted "with the intent to kill or permanently maim, disfigure, disable Edward

West." During closing arguments, the Commonwealth highlighted that element and stated, "the defendant was trying to disable Mr. West. He wanted those keys. He was trying to get to those keys. He was going to do whatever he needed to do to get those keys. He was trying to disable him." Appellant did not object to the argument. During deliberations, the jury asked whether "disable," as used in the instruction, meant to "physically cause a disability" or "cause an inability to do something." The trial court, with the agreement of the parties, directed the jury to reread the instructions. The jury found appellant guilty of aggravated malicious wounding. The court sentenced Fries in accordance with the jury's recommended sentence of twenty-five years. This appeal follows.

## ANALYSIS

### A. Sufficiency of the Evidence

Appellant argues that his aggravated malicious wounding conviction should be reversed because the evidence was insufficient to establish that he "acted maliciously with the intent to maim, disfigure, or kill."[3] Appellant contends that he acted during a "sudden quarrel" in the "heat of passion," thus lacking malice. We affirm appellant's conviction because the record supports the jury's verdict.

Viewing the evidence in the light most favorable to the Commonwealth because it prevailed at trial, we do not consider whether we believe appellant's guilt was established

---

[3] Appellant also asserts that the evidence is insufficient to prove that he stabbed West because there was no testimony to corroborate West's testimony and no knife was introduced into evidence. Appellant and the victim were the only witnesses to the altercation and gave conflicting testimony. "The fact finder, who has the opportunity to see and hear the witnesses, has the sole responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." *Commonwealth v. McNeal*, 282 Va. 16, 22 (2011) (emphasis omitted) (quoting *Commonwealth v. Taylor*, 256 Va. 514, 518 (1998)). In this case, the trier of fact determined that the victim's testimony was credible. Thus, it was correct for the jury to rely on the testimony of the victim even if uncorroborated. Additionally, although no one recovered a knife, appellant testified that there was a knife and that a knife caused the victim's wound. Additionally, the victim's medical records identify his injury as a stab wound.

beyond a reasonable doubt. *See Palmer v. Commonwealth*, 71 Va. App. 225, 236 (2019). Rather, we "ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at 237 (quoting *Crowder v. Commonwealth*, 41 Va. App. 658, 663 (2003)).

A finding of malice is crucial to a conviction for aggravated malicious wounding. *See* Code § 18.2-51.2 (a person must "maliciously . . . stab[], cut[], or wound[] any other person or by any means cause[] [him] bodily injury, with the intent to maim, disfigure, [or] disable"). A person acts with malice when he deliberately or purposely commits a "cruel act without any or without great provocation." *Branch v. Commonwealth*, 14 Va. App. 836, 841 (1992). Whether malice was present is a fact question determined by the trier of fact. *Fletcher v. Commonwealth*, 72 Va. App. 493, 507 (2020). "Malice may be inferred from the 'deliberate use of a deadly weapon unless, from all the evidence, [there is] reasonable doubt as to whether malice existed.'" *Id.* (alteration original) (quoting *Strickler v. Commonwealth*, 241 Va. 482, 495 (1991)). A deadly weapon is something that "is likely to produce death or great bodily injury from the manner in which it is used." *Id.* A knife, when used in a particular manner, may be a deadly weapon. *See Gills v. Commonwealth*, 141 Va. 445, 449 (1925) (holding that a pocketknife is a deadly weapon).

Actions, even if done deliberately, are done without malice if they are done in the heat of passion. *Williams v. Commonwealth*, 64 Va. App. 240, 249 (2015). "'Heat of passion' refers to 'the *furor brevis* which renders a man deaf to the voice of reason.'" *Graham v. Commonwealth*, 31 Va. App. 662, 671 (2000) (quoting *Caudill v. Commonwealth*, 27 Va. App. 81, 85 (1998)). The accused must prove that the crime was committed with "passion" and "reasonable provocation." *Id.* "Words alone . . . are never sufficient to constitute heat of passion." *Rhodes v. Commonwealth*, 41 Va. App. 195, 201 (2003); *see Palmer*, 71 Va. App. at 238 (upholding

defendant's aggravated malicious wounding conviction when, after defendant and his partner had an argument about the partner's infidelity, defendant returned one to two hours later, stabbing his partner fourteen times); *Caudill*, 27 Va. App. at 84-85 (holding that the trial court was not required to instruct the jury on heat of passion because the evidence in the record showed only that defendant and the victim exchanged "harsh words" before defendant slashed the victim's face with "a shiny object").

The evidence here establishes that appellant acted with malice rather than in the heat of passion. The only possible provocation for appellant's stabbing of West was the heated argument the two had, but words are never enough to constitute heat of passion. Thus, the evidence sufficiently supports the jury's verdict that appellant acted with malice when he stabbed West.

## B. Speedy Trial

### (1) Statutory Speedy Trial

Appellant argues that his statutory right to a speedy trial was violated. As he acknowledged at trial and during oral argument, the Supreme Court's emergency orders tolled appellant's statutory speedy trial right. *See Ali v. Commonwealth*, 75 Va. App. 16, 31-33 (2022); *Brown v. Commonwealth*, 75 Va. App. 388, 406 (2022).

"[A] statutory speedy trial challenge presents a mixed question of law and fact." *Ali*, 75 Va. App. at 29 (alteration in original) (quoting *Young v. Commonwealth*, 297 Va. 443, 450 (2019)). "The appellate court gives deference to the trial court's factual findings but reviews legal issues *de novo*, including questions regarding the proper construction of a statute." *Id.*

Code § 19.2-243 provides that the trial of an adult defendant, who has been held continuously in custody for a felony offense, "shall be forever discharged from prosecution" if his trial is not "commenced in the circuit court within five months from the date" the district

court found probable cause he committed the offense. The statute contains several exceptions, including the "failure to try the accused . . . caused . . . [b]y a natural disaster." Code § 19.2-243(7). This Court has determined that the COVID-19 pandemic qualified as a "natural disaster" for tolling the statutory right to a speedy trial. *See Ali*, 75 Va. App. at 52.

Appellant's case is governed by our decisions in *Ali* and *Brown*. Appellant's initial preliminary hearing was continued from February 26, 2020, to April 2, 2020, but the preliminary hearing was not held until July 24, 2020, because the Supreme Court issued its first judicial emergency order on March 16, 2020. The Court's subsequent orders extended the judicial emergency from March 16 through the date of appellant's trial on April 28, 2021. *See* EDO of Apr. 12, 2021 (extending emergency until May 9, 2021).[4] As in *Ali* and *Brown*, the delay in holding appellant's trial did not violate his statutory speedy trial right. *See Ali*, 75 Va. App. at 31-33, 52; *Brown*, 75 Va. App. at 405-06.

(2) <u>Constitutional Speedy Trial</u>

Appellant also argues that his constitutional rights to speedy trial, under both the U.S. and Virginia Constitutions, were violated. However, applying the analysis established in *Barker*, 407 U.S. at 530, we conclude that appellant's constitutional speedy trial rights were not violated.

"Constitutional issues present questions of law reviewed *de novo* on appeal." *Ali*, 75 Va. App. at 33. "To the extent such review involves underlying factual findings, those findings may not be disturbed unless 'plainly wrong' or 'without evidence to support them.'" *Id.* (quoting *Wilkins v. Commonwealth*, 292 Va. 2, 7 (2016)).

---

[4] Even if we assume, without deciding, that the seventy-day delay from February 17, 2021, the earliest apparent date that appellant could have been brought to trial, to April 28, 2021, the date the trial was held, was not tolled by the Supreme Court's emergency orders, no statutory violation occurred.

Appellant's federal constitutional speedy trial right under the Sixth Amendment is coextensive with his speedy trial right under Article I, Section 8, of the Virginia Constitution. *See id.* at 33-34. The constitutional test requires balancing four factors: (a) "the [l]ength of delay"; (b) "the reason for the delay"; (c) "the defendant's assertion of his right"; and (d) "prejudice to the defendant." *Id.* at 34 (alteration in original) (quoting *Barker*, 407 U.S. at 530). "None of the factors is either 'necessary or sufficient' to finding a violation[,]" but "are related" and must be considered together. *Id.* at 35 (quoting *Kelley v. Commonwealth*, 17 Va. App. 540, 544 (1994)). To prevail on his claim, appellant "must establish that 'on balance,' the factors 'weigh in his favor.'" *Id.* (quoting *United States v. Thomas*, 55 F.3d 144, 148 (4th Cir. 1995)).

"The delay is calculated from the time of arrest." *Id.* "It is well established that delay 'approach[ing] one year' is 'presumptively prejudicial' and requires further review." *Id.* (alteration in original) (quoting *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)). Appellant was in custody from his arrest on January 30, 2020, until his trial on April 28, 2021, a delay totaling fifteen months, which requires us to examine the other three factors. *See Beachem v. Commonwealth*, 10 Va. App. 124, 131 (1990) (holding that a presumptively prejudicial delay triggers further review of the remaining factors).

After establishing presumptively prejudicial delay, the Commonwealth must show whether the delay was attributable to the defendant or the Commonwealth and that the delay attributed to the Commonwealth was "justifiable." *Ali*, 75 Va. App. at 36 (quoting *Fowlkes v. Commonwealth*, 218 Va. 763, 767 (1978)).

In deciding the case on the "best and narrowest ground," we attribute most of the fifteen-month delay to the Commonwealth "because doing so does not change the outcome of the appeal." *Id.* at 37 n.9. We attribute to the Commonwealth the delays from January 30, 2020, to

September 11, 2020, and from September 30, 2020, to April 28, 2021. We attribute the delay from September 11, 2020, to September 30, 2020, to appellant because he acknowledged responsibility for the delay.

Next we consider whether the delay attributed to the Commonwealth was justified. Reasons for delay are assessed differently. *See Barker*, 407 U.S. at 531. Deliberate delay intended to "hamper the defense" is weighed more heavily against the Commonwealth than "negligence" in scheduling or "overcrowded courts." *Id.* Delay due to "a valid reason" is justif[ied]." *Id. See Ali*, 75 Va. App. at 42.

Here, we conclude that the rescheduling of the trial from January 21, 2021, to April 28, 2021, due to a "clerical error" encompasses "negligence in scheduling" the trial date.[5] There is no evidence the Commonwealth intentionally delayed the proceedings to hamper the defense or harass appellant, but "the ultimate responsibility for trying a defendant must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 531. *See Fowlkes*, 218 Va. at 766-67 (stating that even though "[s]ome delay cannot be avoided in the ordinary administration of justice," the Commonwealth is responsible for timely prosecuting the accused).

We hold that the remaining twelve-month delay attributable to the Commonwealth has a valid justification. The delay from January 30, 2020, to March 16, 2020 occurred "in the ordinary course of the administration of justice." *Brown*, 75 Va. App. at 408-09 (quoting *Ali*, 75 Va. App. at 52-32). The Supreme Court's emergency orders in response to the COVID-19 pandemic, beginning on March 16, 2020, and continuing through April 28, 2021, caused the ensuing delay in bringing appellant to trial. "A pandemic-related delay is 'valid, unavoidable,

---

[5] Assuming, for the sake of argument, that a different judge could have held the trial on an earlier date and the delay from that date to April 28 was because the original judge chose to keep the matter on her docket, our analysis would be the same. The decision to keep the trial on the original judge's docket also falls under the definition of negligence in scheduling a trial date.

and outside the Commonwealth's control.'" *Brown*, 75 Va. App. at 409 (quoting *Ali*, 75 Va. App. at 45). *See also Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67-68 (2020) (recognizing that "[s]temming the spread of COVID-19 is unquestionably a compelling [governmental] interest").

The timing and manner in which appellant asserted his right is the third factor we consider. "[D]elay in asserting the right weighs against finding a violation" of speedy trial rights. *Ali*, 75 Va. App. at 46. A "purely *pro forma* objection," *Rogers v. Commonwealth*, 5 Va. App. 337, 347 (1987), is given less weight. *Brown*, 75 Va. App. at 409.

Appellant, who had been in custody since his arrest on January 30, 2020, did not assert his constitutional right to a speedy trial until nearly a year later at the hearing on January 15, 2021. In selecting a new trial date of April 28, 2021, appellant's counsel told the trial court that his client did not waive speedy trial, but he acknowledged that the Supreme Court's emergency orders had restricted the trial court's ability to hold a jury trial during the pandemic. In essence, appellant's assertion of his speedy trial right was merely a formality to preserve the issue for any future appeal. *See Commonwealth v. Jerman*, 263 Va. 88, 94 (2002) (holding that the "perceived futility" of objecting "does not excuse" a defendant from doing so because of the duty to create a record for appeal). Further, appellant did not file a motion to dismiss on speedy trial grounds until April 21, 2021, a week before his scheduled jury trial. Accordingly, we give slight weight to this assertion. *See Ali*, 75 Va. App. at 46 (giving less weight to the appellant's assertion of his speedy trial right when he did not assert his right until after he had been in custody for six and a half months and the Supreme Court had begun entering emergency orders restricting jury trials).

The final factor is prejudice. "The constitutional speedy trial right protects three related interests: '(1) preventing oppressive pretrial incarceration; (2) minimizing the accused's anxiety; and (3) limiting the possibility that the defense will be impaired.'" *Id.* at 47 (quoting *Kelley*, 17

Va. App. at 546). The third interest is the "most important" "because the inability of a defendant to prepare his case skews the fairness of the entire system." *Id.* (quoting *Doggett*, 505 U.S. at 654).

Prejudice is assessed under a "three-tiered test" depending upon the government's "degree of culpability" in the delay. *Id.* (quoting *Shavin v. Commonwealth*, 17 Va. App. 256, 268 (1993)). If the Commonwealth intentionally delayed prosecuting the appellant, the "'delay will be weighed heavily against the government' even if 'the accused cannot demonstrate exactly how it has prejudiced him.'" *Id.* (quoting *Doggett*, 505 U.S. at 656-57). However, "if the Commonwealth bears no fault in the delay and proceeds 'with reasonable diligence,' then the defendant's 'speedy trial claim w[ill] fail . . . as a matter of course however great the delay, so long as [the defendant cannot] show specific prejudice.'" *Id.* (alteration in original) (quoting *Doggett*, 505 U.S. at 656). If the delay was "caused by governmental negligence," it "'occupies the middle ground.'" *Id.* (quoting *Doggett*, 505 U.S. at 656-57). Although prejudice is presumed when a delay is due to the Commonwealth's negligence, "its weight in appellant's favor will depend on the length of the delay," and a short delay overcomes the presumptive prejudice. *Shavin*, 17 Va. App. at 269 (quoting *United States v. Aguirre*, 994 F.2d 1454, 1456 (9th Cir. 1993)).

Here, most of the delay was justified by the COVID-19 pandemic, requiring appellant to show he was specifically prejudiced by the delay. The trial court found, however, that appellant had not established any specific prejudice. The presumed prejudice attached to the delay due to negligence is overcome by the short length of the delay, which was only about three months and one week. Thus, this factor weighs in favor of the Commonwealth.

Considered together, the four *Barker* factors weigh in favor of the Commonwealth. The delay, while mostly attributed to the Commonwealth, was justified by the ordinary course of the

administration of justice or the COVID-19 pandemic. Appellant acknowledged the effect of the

pandemic in asserting his speedy trial right. Appellant failed to establish any prejudice from the

delay. Thus, we hold that appellant has not shown his constitutional speedy trial rights were

violated. *See Brown*, 75 Va. App. at 410.

<h3 style="text-align:center">C. Jury Question about Definition of "Disable"</h3>

Appellant argues that his conviction should be reversed because the trial court "fail[ed] to

prevent jury confusion" by not defining "disable" in response to the jury's question. Instead, the

trial court directed the jury to reread the instructions. Appellant did not object to the court's

response, but rather, agreed that the response was correct.[6] An appellant may not "approbate and

reprobate" by taking inconsistent positions at trial and on appeal. *See Rowe v. Commonwealth,* 277

Va. 495, 502 (2009); *Bagley v. Commonwealth*, 73 Va. App. 1, 19-20 (2021). Consequently, we

will not consider his argument on appeal. *See Rompalo v. Commonwealth*, 72 Va. App. 147,

158-59 (2020), *aff'd*, 299 Va. 683 (2021).

<h3 style="text-align:center">CONCLUSION</h3>

For the reasons stated above, we hold that the trial court did not err and affirm appellant's

conviction for aggravated malicious wounding.

*Affirmed*.

---

[6] Appellant acknowledges that he did not object at trial but asks that we apply the ends of justice exception to Rule 5A:18. We decline to do so. The ends of justice exception is "narrow and . . . to be used sparingly." *Brittle v. Commonwealth*, 54 Va. App. 505, 512 (2009) (quoting *Pearce v. Commonwealth*, 53 Va. App. 113, 123 (2008)). Invoking the exception requires finding that the trial court erred and that applying the exception "is necessary to avoid a grave injustice or the denial of essential rights." *Charles v. Commonwealth*, 270 Va. 14, 17 (2005). The exception does not apply here. The trial court properly responded to the jury's question. The instruction stated clearly that the jury had to find the stabbing was done "with the intent to kill or permanently maim, disfigure, disable" West. "A trial court is not required to define unambiguous terms for the jury." *Gray v. Commonwealth*, 30 Va. App. 725, 733 (1999), *aff'd*, 260 Va. 675 (2000).